UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RONALD ANDREWS,
    Plaintiff

vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:09-cv-339
(Dlott, J.)
(Hogan, M.J.)

## REPORT AND RECOMMENDATIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for Disability Insurance Benefits (DIB). This matter is before the Court on plaintiff's Statement of Errors (Doc. 10), the Commissioner's Memorandum in Opposition. (Doc. 16) and plaintiff's Reply. (Doc. 17).

### PROCEDURAL HISTORY

Plaintiff, Ronald Andrews, was born on May 22, 1949 and was 59 years old at the time of the administrative law judge's (ALJ) decision. Plaintiff has a Bachelor of Arts in Sociology and past relevant work experience as a case worker/manager and program aid group worker.

Plaintiff filed an application for DIB on January 20, 2005, alleging disability since January 15, 2002, due to a diabetes and high blood pressure. (Tr. 68-70; 83). Plaintiff's applications were denied initially and upon reconsideration. (Tr. 35-40). Plaintiff requested and was granted a de novo hearing before an ALJ. On March 7, 2008, plaintiff, who was represented by counsel, appeared and testified at a hearing before ALJ Samuel A. Rodner. (Tr. 709-27). A medical expert (ME), George M. Collard, M.D. and vocational expert (VE), Robert E. Breslin, also appeared and testified at the hearing. (Tr. 727-70).

On April 28, 2008, the ALJ issued a decision denying plaintiff's DIB application. The ALJ determined that plaintiff last met the insured status requirements of the Social Security Act on September 30, 2006. (Tr. 22). Next, the ALJ determined that plaintiff suffers from the severe impairments of pronounced diabetes, mild diabetic neuropathy, and morbid obesity, but that such impairments do not alone or in combination meet or equal the level of severity described in the Listing of Impairments. (Tr. 22, 24). According to the ALJ, plaintiff retains the residual functional capacity (RFC) to perform the full range of medium exertional work. (Tr. 24). The ALJ next determined that through the date last insured, plaintiff's past relevant work as a program aid group worker and case manager did not require the performance of work-related activities precluded by his RFC. (Tr. 28). Consequently, the ALJ concluded that plaintiff is not disabled under the Act. (Tr. 29). The Appeals Council denied plaintiff's request for review (Tr. 6-9), making the decision of the ALJ the final administrative decision of the Commissioner.

## MEDICAL RECORD

In his Statement of Errors, plaintiff does not challenge the ALJ's findings with respect to his alleged mental impairments. (Doc. 10). Accordingly, the Court will focus its review of the medical evidence on plaintiff's alleged exertional impairments.

Plaintiff alleges that he became disabled as of January 15, 2002. His insured status expired on September 30, 2006. *See* 42 U.S.C. § 423(a); 20 C.F.R. § 404.101(a). The most critical evidence in the present case relates to the time period between those two dates.

Plaintiff began treating with gastroenterologist, Mahendra Matta, M.D. in December 1992 for recurring fistula rectal abscesses. (Tr. 152-71, 260-98). Plaintiff's rectal abscesses and anal fistulas occurred from 1992-96 and again from 2004-2007. Plaintiff has undergone several tests and procedures to treat and correct the fistulas. (Tr. 153-55, 157, 160, 165, 286-87, 292). In August 2004, plaintiff underwent a colonoscopy to determine the source of his recent rectal bleeding. Dr. Matta found that plaintiff had hemorrhoids and diverticulosis. (Tr. 274). In January 2005, Dr. Matta reported plaintiff's abscess was not healing. (Tr. 270). In June 2005, Dr. Matta noted that

plaintiff's anal area was almost healed. (Tr. 267). By August 2005, Dr. Matta reported that it had healed. (Tr. 266).

Plaintiff began treatment at the Internists of Fairfield in 2003 with Dr. Marcus Cobb and Nurse Practitioner ("NP") Ann Stone for diabetes and hypertension. (Tr. 172-96, 305-48). Their treatment notes document that plaintiff's insulin-dependent diabetes was uncontrolled. (Tr. 177, 179, 185, 193, 307). During examinations in 2004, NP Stone noted that plaintiff's protective sensation in his feet had decreased. (Tr. 321-29). Plaintiff never had any peripheral edema and his peripheral pulses were 2+. (Tr. 321-37). NP Stone noted that plaintiff's hypertension was controlled but that his diabetes was still uncontrolled. (Tr. 324, 326, 328, 330).

In February 2005, NP Stone completed interrogatories. She reported that plaintiff's difficulty achieving diabetic control was due to his noncompliance. NP Stone also reported that plaintiff had slightly diminished sensation in his feet. NP Stone further reported that plaintiff's symptoms were so minor, an electromyography (EMG) was not warranted. NP Stone reported that plaintiff had not had any frequent or severe hypoglycemic reactions which would warrant emergency action. NP Stone reported that plaintiff had a normal gait and did not require ambulatory aids. NP Stone reported that plaintiff did not have nephropathy or diabetic retinopathy. NP Stone concluded that to date, plaintiff had not suffered complications from diabetes. (Tr. 197-99).

Dr. Cobb and NP Stone continued to treat plaintiff throughout 2005. (Tr. 307-19). After adjusting plaintiff's medications, Ms. Stone noted that plaintiff's diabetes and hypertension were well-controlled in November 2005. (Tr. 307).

State agency reviewing physician, Dr. Myung Cho, opined in March 2005 that plaintiff could perform medium exertional level work. Dr. Cho limited plaintiff to medium exertional level work because the treatment notes report that plaintiff is non-compliant with diabetic medication. He has no history of ketoacidosis or retinopathy. He does have some mild decrease in sensation to bilateral feet. There is no end organ damage. Dr. Cho further noted that plaintiff does have hypertension, which has not been well controlled. Dr. Cho also noted that plaintiff listed his reason for filing for disability was due to stress. Dr. Cho noted that plaintiff should avoid working around hazards and heights due to his mild diabetic neuropathy. (Tr. 201-10).

3

According to Dr. Cho, plaintiff's allegations were partially credible. In August 2005, Dr. August Pangalangan, another state agency reviewing physician, affirmed Dr. Cho's assessment. (Tr. 210).

Plaintiff treated with Theodore M. Hunter, M.D., from July 2005 through August 2007, for continued suboxone treatment for opioid dependence. (Tr. 359-78). Dr. Hunter took over plaintiff's primary care in August 2007. (Tr. 505). The record contains additional treatment notes from Dr. Hunter dated though February 2008. (Tr. 505-41).

Plaintiff treated with Thomas Nguyen, M.D. from December 2005 through July 2007. (Tr. 379-404, 684-95). Initially, Dr. Nguyen reported that plaintiff complained of burning pain in his feet and he observed decreased pulses there. (Tr. 390). In May 2006, plaintiff underwent an abdomen ultrasound, which showed minimal increase in echo pattern to the liver consistent with weight fatty infiltration and/or primary hepatic parenchymal disease. (Tr. 395). In July 2006, x-rays of plaintiff's right foot showed moderate pes planus deformity. (Tr. 394). In 2007, Dr. Nguyen's diagnoses of plaintiff included upper extremity neuropathy, diabetes mellitus, hyperlipidemia, coronary artery disease, Hepatitis C, and chronic neuropathic pain. (Tr. 380-81). During this time plaintiff's glucose numbers ranged from 102 to as high as 520. (Tr. 333, 337, 342, 347, 508, 510, 545, 551, 622).

An arterial Doppler study performed on April 19, 2007, showed calcified non-compressible arteries over the right thigh, mild stenosis of the right dorsalis pedis artery; and calcified atherosclerotic arteries in the left thigh, with mild stenosis of the left superficial femoral artery and left dorsalis pedis arteries. (Tr. 372-73, 391, 443).

In May 2007, Dr. Nguyen reported that plaintiff could occasionally lift 20 pounds due to chronic hepatitis and diabetes. Plaintiff could sit, stand or walk for 1 hour without interruption in an 8-hour workday due to his "painful feet neuropathy." Dr. Nguyen opined that plaintiff could never climb, and could only occasionally balance, stoop, crouch, kneel, and crawl. Dr. Nguyen also reported that plaintiff had to avoid heights, moving machinery, chemicals, temperature extremes, dust, noise, fumes, humidity, and vibration. Dr. Nguyen agreed that plaintiff would be absent from work more than three days per month. (Tr. 302-04).

4

Dr. Hunter reported on October 22, 2007, that plaintiff was able to occasionally lift ten pounds; to stand and/or walk for one hour and sit for one to two hours due to peripheral neuropathy with foot pain; could only occasionally climb, balance, stoop, or crawl; and should never crouch or kneel due to back pain. (Tr. 299-301). According to Dr. Hunter, plaintiff was to avoid exposure to chemicals and vibration. (Tr. 301). On November 13, 2007, Dr. Hunter clarified his October 2007 opinion, noting his opinion would have been "the same and no different" on or before September 30, 2006. (Tr. 442). Dr. Hunter further opined that plaintiff would be absent more than three days per month from any work environment on or before September 30, 2006. Dr. Hunter noted that his medical opinion is based upon his education and training, on his examinations and treatment of plaintiff, and upon his review of an arterial Doppler study performed on April 19, 2007. (Tr. 442-43).

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for DIB, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(1),423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the

impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

The Commissioner is required to consider plaintiff's impairments in light of the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing). The Listing sets forth certain impairments which are presumed to be of sufficient severity to prevent the performance of work. 20 C.F.R. § 404.1525(a). If plaintiff suffers from an impairment which meets or equals one set forth in the Listing, the Commissioner renders a finding of disability without consideration of plaintiff's age, education, and work experience. 20 C.F.R. § 404.1520(d); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

The treating physician rule, when applicable, requires ALJs to place controlling weight on a treating physician's opinion rather than favoring the opinion of a nonexamining medical advisor, or an examining physician who saw a claimant only once,

6

or a medical advisor who testified before the ALJ. *Blakley v. Commissioner of Social Security,* 581 F.3d 399 (6th Cir. 2009); *Wilson v. Comm'r. of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004); *Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1054 (6th Cir. 1983); *see also* 20 C.F.R. §404.1527(d)(2), (e), (f). A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and if it is not inconsistent with other substantial evidence of record. *Wilson*, 378 F.3d at 544; *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997); *see also* 20 C.F.R. §404.1527(d)(2).

If a treating physician's opinion is not given controlling weight, then it must be weighed against other medical source opinions under a number of factors set forth in the Commissioner's Regulations – "namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. §404.1527(d)(2)).

More weight is generally given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources. *See* 20 C.F.R. §404.1527(d)(1). However, the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight. This occurs because the Commissioner views nonexamining sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p.

Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization. *See* 20 C.F.R. §404.1572(d), (f); *see also* Ruling 96-6p at *2-*3.

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that

such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

An impairment can be considered as not severe only if the impairment is a "slight abnormality" which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience. *Farris v. Secretary of Health and Human Services,* 773 F.2d 85, 90 (6th Cir. 1985)(citation omitted); *see also, Bowen v. Yuckert,* 482 U.S. 137 (1987).

## OPINION

The pertinent period of time at issue concerns plaintiff's work abilities and limitations between January 15, 2002 until September 30, 2006. (Tr. 22). Plaintiff bears the ultimate burden of proof on the issue of disability. *Richardson v. Heckler,* 750 F.2d 506, 509 (6th Cir. 1984) (citation omitted). The claimant's specific burden is to prove that he was disabled on or before the last date on which he met the special earnings requirement of the Act. *Id.* (citation omitted); *Moon v. Sullivan,* 923 F.2d 1175, 1182 (6th Cir. 1990). Post insured status evidence of a claimant's condition is generally not relevant. *Bagby v. Harris,* 650 F.2d 836 (6th Cir. 1981); *see also, Bogle v. Secretary of Health and Human Services,* 998 F.2d 342 (6th Cir. 1993). However, such evidence will be considered if it establishes that an impairment existed continuously and in the same degree from the date the insured status expired. *Johnson v. Secretary of Health and Human Services*, 679 F.2d 605 (6th Cir. 1982).

8

Plaintiff contends that the ALJ erred by rejecting the disability opinions provided by his treating physicians Dr. Hunter and Dr. Nguyen. According to plaintiff, the ALJ erred by placing great weight on the medical source statement of a state agency non-examining physician, Dr. Pangalangan, and disregarding the opinions of treating physicians Dr. Hunter and Dr. Nguyen. *See* Doc. 10 at 11. Plaintiff points out that Dr. Hunter's and Dr. Nguyen's opinions were consistent with one another, supported by the evidence, and plaintiff's testimony. Plaintiff also contends that the ALJ erred by failing to find that plaintiff meets Listing 11.14 for peripheral neuropathies.

The Commissioner contends that the ALJ properly rejected Dr. Hunter's and Dr. Nguyen's opinions because they were not well-supported and were inconsistent with the evidence and were, therefore, not entitled to any more weight than the ALJ gave. (Doc. 16 at 13). The Commissioner further argues that plaintiff has not met his burden of showing that his impairments met or equaled listing 11.14 for peripheral neuropathies. The Commissioner argues that, "The opinions upon which Plaintiff relies were rendered one year after Plaintiff's insured status expired and include consideration of evidence which post-dates the relevant time period. Although Dr. Hunter later explained that his opinion regarding plaintiff's RFC would not have been different prior to 2006, the ALJ was reasonable in relying upon the contemporaneous opinions of the state agency physicians, rather than a physician offering an opinion in hindsight." *See* Doc. 16 at 14.

In October 2007, Dr. Hunter opined that the plaintiff would be unable to perform even sedentary work on a full-time basis. (Tr. 299-301). The ALJ rejected this opinion by recognizing that Dr. Hunter's "medical source statement was done on October 22, 2007, well after September 30, 2006," the date last insured. (Tr. 24). The ALJ further explained that Dr. Hunter's opinion "is poorly explained", by simply stating that plaintiff has peripheral neuropathy with foot pain. Dr. Hunter's report also mentions back pain for which there is no substantial evidence. Finally, Dr. Hunter's assessment is markedly inconsistent with other significant evidence, namely his own treatment
notes documenting the claimant's treatment up to September 30, 2006." (Tr. 24-25, citation to record omitted).

9

By declining to apply controlling weight to Dr. Hunter's opinion, based on his omission of supporting objective medical evidence before September 30, 2006, the ALJ did not err as a matter of law. *See* 29 C.F.R. §404.1527(d)(2). Dr. Hunter initially treated plaintiff with relation to his addiction problems. *See* Tr. 359-78. Most of Dr. Hunter's examination findings during this period involved plaintiff's blood pressure and affect. (Tr. 360-65). For example, in September 2005, Dr. Hunter reported that plaintiff was doing quite well and that his condition was stable. (Tr. 361). The absence of progress notes and other contemporaneous medical records regarding the treatment provided by Dr. Hunter for the period at issue entitles his unadorned opinion to virtually no weight.

Turning to Dr. Nguyen's disability opinion, the ALJ reported that Dr. Nguyen does not differentiate between subjective and objective evidence, nor between evidence before September 30, 2006 and after. (Tr. 26). The ALJ further explained that Dr. Nguyen's notes are difficult to read. The ALJ requested that Dr. Nguyen type a treatment note dated October 9, 2006. In this note, Dr. Nguyen does indicate, "in the claimant's favor", that on October 9, 2006, there was a decreased monofilament sensory test. But this is after September 30, 2006, and the last time Dr. Nguyen found a positive monofilament sensory test. On March 28, 2006, the only time Dr. Nguyen documented a monofilament sensory test before September 30, 2006, the test was normal. *Id.* The ALJ's decision easily satisfies the procedural requirement of giving "good reasons" for not giving controlling weight to the opinions of Dr. Hunter and Dr. Nguyen. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875-76 (6th Cir. 2007); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

The ALJ's finding that Dr. Hunter's and Dr. Nguyen's opinions were entitled to little weight, because they are removed from the relevant time period, was entirely appropriate. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). "Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Social Sec. Admin.*, 88 Fed. Appx. 841, 845 (6th Cir. 2004).

Plaintiff asserts that the ALJ erred in relying on the opinions of Drs. Cho and Pangalangan because they did not examine plaintiff and their assessments were not based upon a review of the entire record. Plaintiff's assertion lacks merit.

Social Security Ruling 96-8p requires that the ALJ's RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." SSR 96-8p further provides:

> In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.*

The ALJ is also required to include "a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." (*Id*).

Here, the ALJ based his physical RFC determination on the March 2005 recommendations of the non-examining medical consultants of the Bureau of Disability Determination, Dr. Cho and Dr. Pangalangan. (Tr. 27). The ALJ found that these assessments were entitled to considerable deference as they were consistent with the medical findings of record and were not rebutted by other substantial evidence. *Id.* The ALJ further explained that the state agency opinions are the only medical source statements that were completed before September 30, 2006. *Id.* Accordingly, the undersigned finds that the RFC as determined by the ALJ is supported by substantial evidence. Although the RFC selected by the ALJ might not be the same RFC that plaintiff would have selected, the ALJ clearly explained his rationale, and the RFC is, without question, within the permissible "zone of choice" which the Sixth Circuit discussed in *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's RFC is thus not subject to reversal.

Plaintiff also contends that the ALJ improperly determined that plaintiff does not meet or medically equal Listings 11.14. However, plaintiff did not argue that the ALJ erred in his analysis of Listing 9.08. (Doc. 10 at 9-10). Plaintiff has not shown that his impairments meet Listing 11.14.

11

A claimant meets the Section 11.14 Listing, peripheral neuropathies, if he or she establishes that the impairment causes "disorganization of motor function as described in 11.04B, in spite of prescribed treatment." 20 C.F.R. pt. 404, subpt. P, App. 1 § 11.14. Listing 11.04B requires "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)." 20 C.F.R. pt. 404, subpt. P, App. 1 § 11.04B. Section 11.00C provides as follows:

> Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands and arms.

20 C.F.R. pt. 404, subpt. P, App. 1 § 11.00C.

To satisfy his burden at Step 3, plaintiff must show that his impairments meet all of the criteria in Listing 11.14. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); *Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530. Similarly, to show that he equals a listed impairment, plaintiff must "present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Zebley*, 493 U.S. at 531. It is not enough for plaintiff to show that the overall functional impact of his impairment is as severe as that of an impairment in the Listings. *See Zebley*, 493 U.S. at 351.

Given the potentially dispositive nature of the Listings, plaintiff had much to prove at Step 3. The Supreme Court explains:

> The Secretary [now, the Commissioner] has set the medical criteria defining the listed impairments at a higher level than the statutory standard. The listings define impairments that would prevent an adult regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'... The reason for this difference between the listings' level of severity and the statutory standard is that ... the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary. That is, if an adult is not actually working and his impairment

12

matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work.

*Zebley*, 493 U.S. at 532 (internal citations omitted).

The ALJ considered all of the evidence of record and reasonably determined:

... the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. The closest listing is section 9.08(A) which is neither met nor equaled. There is no evidence whatsoever of any persistent disorganization of motor functioning in anyone extremity, much less two. In fact, there is no evidence of any motor dysfunction at all, as opposed to sensory dysfunction. At every time when the claimant's gait and station were tested, moreover, every treating source who examined the claimant found same to be normal. Furthermore, the medical evidence does not show that the claimant, during the relevant period, experienced recurrent acidosis occurring at least on the average of once every two months documented by appropriate blood chemical tests; nor does the medical evidence show that the claimant has the requisite severity of retinitis proliferans to meet or equal the listing, 20 CFR Part 404, Subpart P, Appendix 1.

(Tr. 24).

As discussed above, the ALJ recognized that plaintiff's pronounced diabetes, mild diabetic neuropathy, and morbid obesity were severe impairments that limited his ability to work. (Tr. 22-24). Merely because plaintiff was diagnosed with neuropathy, did not necessitate a finding of disability. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."); *see also Young v. Secretary of HHS*, 925 F.2d 146, 151 (6th Cir. 1990)("a claimant must do more to establish a disabling mental impairment than merely show the presence of a dysthymic disorder."); *Kennedy v. Astrue*, 247 Fed.Appx. 761, 767 (6th Cir. 2007)("mere diagnosis of obesity does not establish either the condition's severity or its effect on [the claimant's] functional limitations.").

13

## CONCLUSION

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

Because substantial evidence supports the decision of the ALJ, we recommend that his decision be **AFFIRMED** and that this case be **DISMISSED** from the docket of the Court.

Date: 9/20/10

Timothy S. Hogan
United States Magistrate Judge

14

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), within fourteen (14) days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).